# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **TONIA LAVERNE COOPER**, | ) |
| Plaintiff, | ) Case No. 7:06CV00053 |
| v. | ) **OPINION AND ORDER** |
| **RONALD BONAVENTURA, JR., ET AL.**, | ) By: James P. Jones |
| | ) Chief United States District Judge |
| Defendants. | ) |

*Burton L. Albert, Roanoke, Virginia, for Plaintiff; Charles S. Leeper and James K. Webber, Drinker Biddle & Reath LLP, Washington, D.C., for Defendant Ronald Bonaventura, Jr.*

The question in this *Bivens* action is whether a federal agent is entitled to qualified immunity where he forcibly seized a small recording tape from the plaintiff after she placed it in her mouth to prevent the agent from obtaining it. Based on all of the circumstances of the encounter between the plaintiff and the agent, I find that he is entitled to qualified immunity and will dismiss the action against him.

I

The plaintiff Tonia Laverne Cooper filed the present action asserting federal and state law claims against defendants Ronald Bonaventura, Jr., a federal Drug Enforcement Administration agent, and Kenneth Garrett, a Roanoke, Virginia, police

officer, following a confrontation that occurred between Cooper and Bonaventura and Garrett in Roanoke on September 20, 2004. Upon certification by the United States Attorney under the Federal Tort Claims Act, 28 U.S.C.A. § 2679(d)(1) (West 1994), the United States was substituted for defendants Bonaventura and Garrett as to the plaintiff's state claims. The plaintiff has agreed to a voluntary dismissal with prejudice of the federal claims against defendant Garrett. In turn, defendant Bonaventura has moved to dismiss the federal claims against him. His Motion to Dismiss has been fully briefed and argued and is ripe for decision.

The plaintiff claims that Bonaventura violated her Fourth Amendment rights by seizing her without probable cause and using excessive force. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S 388, 389 (1971) (holding that a violation of Fourth Amendment rights by a federal agent acting under color of authority gives rise to a cause of action for damages). Bonaventura contends that he is immune from suit under the doctrine of qualified immunity. Pursuant to that doctrine, law enforcement officers performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity protects law enforcement officers from bad guesses in gray areas and

ensures that they are liable only for transgressing bright lines." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006) (internal quotations omitted).

To decide a defense of qualified immunity, I must first determine whether the agent has violated a particular constitutional right and if so, next proceed to decide whether that right was clearly established at the time of the violation. *Id.* In regard to this latter question, "the relevant inquiry is whether it would be clear to an objectively reasonable officer that his conduct violated the constitutional right." *Id.* (internal quotation and alteration omitted). Qualified immunity may be properly raised in a motion to dismiss. *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997). Indeed, determination of the issue at the earliest possible stage of litigation is in accord with the purposes of immunity. *See id.* In ruling on the motion, however, I must accept as true the facts as alleged in the Complaint in the light most favorable to the plaintiff. *Id.*

II

The plaintiff alleges that on September 20, 2004, she drove to her sister's home in Roanoke, Virginia, to pick up her nephew. (Compl. ¶ 8.) She arrived at the residence with her daughter Alisha Cooper and another sister Tameka Hall and observed several members of the Roanoke Police Department in the area. (Compl.

- 3 -

¶ 9.) The plaintiff was approached by Officer Hartman and told that she could not enter the premises because it was "under investigation." (*Id.*)[1]  Officer Hartman then requested that the plaintiff and Hall produce identification, and they complied.  But when Hall was asked by Officer Hartman if she had a key to the residence, Hall admitted that she did, but refused to give it to him until she saw a search warrant.  Upon Hall's refusal to hand over the key, Officer Hartman "immediately radioed to an unknown party that he 'had' two 'parties' who were 'uncooperative.'" (Compl. ¶ 11.)

The plaintiff then decided to tape any further conversations with the police out of fear that because of her relationship with the occupants of the house being searched, she was being "set up."  (Compl. ¶ 12.)  The plaintiff advised Officer Hartman that she was recording the conversation, and he "expressed his acquiescence of her decision to do so." (*Id.*)  Soon after the plaintiff began taping, Officer Hartman walked away and conferred with Officer Ruffman who then approached the plaintiff and informed her that her license tags were illegal or being used in some illegal way.  (Compl. ¶ 13.)

---

[1] Counsel for the plaintiff represented at oral argument that the plaintiff never entered the house or its surrounding private property.  The Complaint states that "[a]t no time material did the plaintiff ever enter upon the premises." (Compl. ¶ 19.)

- 4 -

Defendant Bonaventura subsequently arrived at the scene, produced the search warrant to the plaintiff and her sister, and received from them the key. He also told the plaintiff, "give up the tape or take a ride downtown." (Compl. ¶ 15.) The plaintiff responded "that it [the tape] contained matters she did not want the police to hear." (*Id.*) It was at this point, that the plaintiff took the tape out of the recorder, gave the recorder to her daughter, placed the tape in her mouth, turned around, and placed her hands behind her back to be cuffed. (*Id.*) In order to seize the tape, "Bonaventura put the plaintiff in a choke hold and threw her to the ground." (Compl. ¶ 16.) He also placed his hand over her nose. When these maneuvers failed to dislodge the tape, Bonaventura sprayed the plaintiff with pepper spray, causing her to spit out the tape. (*Id.*)

### III

While the plaintiff claims that Bonaventura violated her Fourth Amendment rights by seizing her without probable cause and by using excessive force, her attorney conceded at oral argument that there was no excessive force used if the seizure of the tape was valid. Thus, whether Bonaventura is shielded by qualified immunity from both claims hinges on the validity of that seizure.

The threshold question in determining whether a law enforcement officer is entitled to qualified immunity is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If I conclude that a constitutional right was in fact violated, I must then ask whether the right was clearly established at the time of the violation. *See id.* A right is clearly established if, "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Thus, the initial question is whether the seizure of the tape was unconstitutional. Bonaventura argues that the seizure was valid because it was supported by probable cause and because of the plaintiff's "unprovoked and sudden action to destroy the tape."[2] (Def.'s Reply Br. Mot. Dismiss 7.) Law enforcement officers may seize evidence without a warrant if there is probable cause and if the officers reasonably believe that evidence could be destroyed before a warrant can be obtained. *United*

---

[2] The defendant also argues that the seizure was valid because the plaintiff was within the curtilage of the home and thus the search warrant covered seizure of the tape. He further argues that even if the tape was not covered by the warrant, an officer in his position could have reasonably believed that the warrant covered the tape. Because I disagree with both of these arguments, I will only address his other grounds—that the seizure was lawful because there was probable cause and exigent circumstances, or, in the alternative, that the seizure did not violate a clearly established right of which an objectively reasonable officer should have known.

- 6 -

*States v. Cephas*, 254 F.3d 488, 494-495 (4th Cir. 2001); *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991) ("The police need not. . . produce concrete proof that the occupants of the room were on the verge of destroying evidence; rather, the proper inquiry focuses on what an objective officer could reasonably believe.") Probable cause exists, "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). "That one is merely present at the scene of a crime or in the company of a person engaging in criminal activity is not, by itself, sufficient to establish probable cause. . . . Seemingly innocent activity, however, though not conclusive of probable cause, may provide the basis for a showing of probable cause when considered in the context of all of the surrounding circumstances." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (internal quotations and citations omitted). When taking all of the circumstances into account, I agree with Bonaventura that there was probable cause to seize the tape.

The plaintiff admits to the conduct that taken together gave rise to probable cause and to the exigent circumstances. As she describes in her Complaint, she identified herself as closely related to the occupants of the house being searched, her sister had a key to the house, and she placed the tape in her mouth after telling Bonaventura that it contained matters that she did not want the police to hear. While

taping may not be suspicious in itself, the plaintiff's extraordinary efforts to prevent Bonaventura from seizing the tape after making a suspicious statement regarding it, strongly suggested that the tape contained evidence of a crime.

Even assuming that the seizure was not supported by probable cause, Bonaventura is still entitled to qualified immunity so long as the seizure did not violate a clearly established right of which an objectively reasonable official would have known. *See Harlow,* 457 U.S. at 818. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal quotations and citation omitted). In other words, the relevant question is whether "the state of the law" at the time of the violation gave the officer a "fair warning" that his actions were unlawful. *Jones v. Buchanan*, 325 F.3d 520, 531 (2003).

After reviewing the record, I find that Bonaventura did not violate a clearly established right. The plaintiff has offered no factually similar case in existence at the time of seizure that would suggest that an objectively reasonable officer should have

known that the seizure was unconstitutional.[3] While officers "can still be on notice that their conduct violates established law even in novel factual circumstances," I find that in light of pre-existing law, the unlawfulness of the seizure was not apparent. *See Hope*, 536 U.S. at 741. In short, since the plaintiff has offered no case to suggest that the defendant transgressed a "bright line" rule of impermissible behavior, Bonaventura is entitled to qualified immunity.[4]

IV

For the foregoing reasons, it is **ORDERED** that Defendant Bonaventura's Motion to Dismiss is GRANTED and he is dismissed as a defendant.

ENTER: January 25, 2007

/s/ JAMES P. JONES
Chief United States District Judge

---

[3] In fact, the plaintiff relies on *Ybarra v. Illinois*, 444 U.S. 85 (1979), to suggest that the defendant crossed a bright line rule of impermissible behavior. But as the defendant correctly argues, the facts of this case are quite different from those of *Ybarra,* and I agree that based on this case alone, the defendant would not have been on notice that the seizure was unlawful.

[4] While Bonaventura will be dismissed, this case continues with the plaintiff's claims against the United States under the Federal Tort Claims Act.

- 9 -